IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| NICOLE NICHOLAS, as Administrator of THE DISTRICT 1199C NATIONAL UNION OF HOSPITAL AND HEALTH CARE EMPLOYEES GROUP LEGAL SERVICES FUND, | : : : : : : | CIVIL ACTION |
| Plaintiff, | : : | |
| v. | : : | |
| NORTH PHILADELPHIA HEALTH SYSTEM, | : : : | No. 16-232 |
| Defendant. | : | |

**MEMORANDUM**

**Schiller, J.**                                                                                                   October 4, 2016

      The District 1199C National Union of Hospital and Health Care Employees Group Legal Services Fund (the "Fund"), through its Administrator Nicole Nicholas, is suing the North Philadelphia Health System ("NPHS") for failure to make timely payments to the Fund. The Fund alleges that NPHS breached a collective bargaining agreement and violated the Employment Retirement Income Security Act ("ERISA") by making some payments late and failing to make other payments as required by the agreement. NPHS moves to dismiss the Complaint on the grounds that the collective bargaining agreement requires the Fund to first arbitrate its claim. For the following reasons, the Court denies NPHS's motion.

    **I.**     **FACTUAL AND PROCEDURAL BACKGROUND**

      On December 13, 2012, NPHS entered into a five-and-a-half-year collective bargaining agreement ("CBA") with the National Union of Hospital and Health Care Employees, AFSCME,

AFL-CIO, and its Affiliate District 1199C (the "Union"). Article XXII of the CBA provides that NPHS "shall contribute monthly the sum of seven and one-half cents (.7-1/2) for each hour paid for Employees who have satisfactorily completed their probationary period to a jointly administered group legal services trust fund." (Resp. Mot. Dismiss Ex. A.) The CBA requires NPHS to make contributions "no later than the fifteenth (15th) day of the month following the date on which the payroll period for the preceding is concluded." (*Id.*) The CBA further states that "[a]ny dispute which may arise between the parties as to a claim that any payment to the Fund under this Article is overdue shall be handled in accordance with the Arbitration Article of this Agreement." (*Id.*)

Article XXXIV, in turn, outlines the arbitration procedure. (*Id.*) The arbitrator "shall have jurisdiction only over disputes arising out of grievances," which the CBA defines as "a dispute or complaint arising between the parties hereto under or out of this agreement or the interpretation, application, performance, termination, or any alleged breach thereof." (*Id.*) An unresolved grievance "may . . . be referred for arbitration by NPHS or the Union to an arbitrator." (*Id.*)

The "jointly administered group legal services trust fund" listed in the CBA refers to the Fund. The District 1199C Legal Services Trust Agreement is the "foundational governing document of the Fund." (*Id.* 5; *see id.* Ex. B.) The Union and multiple employers established the trust in 1981 to manage the contributions of all employers who agreed to contribute to the Fund in collective bargaining agreements with the Union. (*Id.* Ex. B.) Under the trust agreement, the "failure of an Employer to pay the Contributions required hereunder shall be a violation of the Collective Bargaining Agreement of the said Employer as well as a violation of the Employer's obligations hereunder." (*Id.*) The Fund's trustees "may compel and enforce payment of the

Contributions in any manner which they may deem proper," and "shall have the power to enforce the provisions of this Agreement in court or at their option through arbitration." (*Id.*)

The Fund[1] sued NPHS on January 19, 2016, alleging that between January 2014 and December 2015, NPHS failed to make timely contributions to the Fund as required by the CBA. NPHS failed to respond, and the Court entered default on February 18, 2016. Upon appearance by counsel and appropriate motion, the Court set aside the default on March 29, 2016. Over three months later, NPHS filed the motion now before the Court.

## II.  DISCUSSION

### A.  Defendant Has Filed A Motion to Compel Arbitration

NPHS styled its motion to dismiss as a "Motion Pursuant to Federal Rule of Civil Procedure 12(b)(1) to Dismiss Plaintiff's Complaint for Lack of Subject Matter Jurisdiction." In the motion, NPHS claims that the arbitration clause in the CBA both robs the Fund of Article III standing and strips the Court of subject-matter jurisdiction. NPHS misses the mark on both counts.

First, the Fund has standing to bring its claims. The Fund is an express third party beneficiary of the CBA, which requires NPHS to make regular contributions to the Fund. *See Sovereign Bank v. BJ's Wholesale Club, Inc.*, 533 F.3d 162, 168 (3d Cir. 2008) ("[U]nder Pennsylvania law, in order for a third party beneficiary to have standing to recover on a contract,

---

[1] The Fund's trustees can appoint a "Trust Administrator" to "handle the day to day operation and administration" of the trust, and may "delegate any of their powers or duties" to their agents or employees. (Resp. Mot. Dismiss Ex. B.) The Fund's trustees have delegated to Nicholas "their duty and power to collect delinquent payments." (Resp. Mot. Dismiss 6.) For the purpose of this opinion, the Court will refer to the plaintiff as "the Fund."

3

both contracting parties must have expressed an intention that the third-party be a beneficiary, and that intention must have affirmatively appeared in the contract itself." (internal quotation marks omitted)). As such, the Fund has a legally protected interest in the enforcement of the contract. The Fund has alleged that NPHS's failure to make timely contributions to the Fund violates both the CBA and ERISA. These are concrete, particularized, and actual violations of the Fund's legal interest in the CBA, allegedly caused by NPHS and redressable by the Court with damages and injunctive relief. Therefore, the Fund has Article III standing to proceed. *See Spokeo, Inc. v. Robins*, 136 S. Ct. 1540, 1547 (2016).

Second, the Third Circuit has held that "motions seeking the dismissal of a declaratory judgment action on the basis that arbitration is required are not jurisdictional as they raise a defense to the merits of an action." *Liberty Mut. Fire Ins. Co. v. Yoder*, 112 F. App'x 826, 828 (3d Cir. 2004); *accord Lloyd v. HOVENSA, LLC*, 369 F.3d 263, 272 (3d Cir. 2004) (holding that whether a party has "a contract-based defense requiring arbitration rather than litigation of those claims" is not a jurisdictional issue). Instead, motions to dismiss based on an arbitration clause are properly considered under Rule 12(b)(6) or Rule 56. *Guidotti v. Legal Helpers Debt Resolution, L.L.C.*, 716 F.3d 764, 776 (3d Cir. 2013). Therefore, the Court will evaluate the motion to dismiss as a motion to compel arbitration. *See, e.g.*, *Pirito v. Penn Eng'g World Holdings*, 833 F. Supp. 2d 455, 466 (E.D. Pa. 2011).

The Federal Arbitration Act provides that arbitration agreements are "valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2. Any "party aggrieved by the alleged failure, neglect, or refusal of another to arbitrate under a written agreement for arbitration may petition any United States

4

district court . . . for an order directing that such arbitration proceed in the manner provided for in such agreement." *Id*. § 4. Before ordering parties to arbitrate, the Court must decide whether the parties entered into a valid agreement to arbitrate. *Alexander v. Anthony Int'l, L.P.*, 341 F.3d 256, 264 (3d Cir. 2003) (citing *Great W. Mortg. Corp. v. Peacock*, 110 F.3d 222, 228 (3d Cir. 1997)).

Because the existence of an arbitration clause is "apparent based on the face of a complaint, and documents relied upon in the complaint," this motion will be "considered under a Rule 12(b)(6) standard without discovery's delay." *Guidotti*, 716 F.3d at 776. In reviewing a motion to dismiss for failure to state a claim, a district court must accept as true all well-pleaded allegations and draw all reasonable inferences in favor of the non-moving party. *See Bd. of Trs. of Bricklayers & Allied Craftsmen Local 6 of N.J. Welfare Fund v. Wettlin Assocs.*, 237 F.3d 270, 272 (3d Cir. 2001). A court need not, however, credit "bald assertions" or "legal conclusions" when deciding a motion to dismiss. *Morse v. Lower Merion Sch. Dist.*, 132 F.3d 902, 906 (3d Cir. 1997); *see also Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

### B. The Fund Can Proceed in Court

The Fund is not obligated to arbitrate its claims. First, the Supreme Court has held that the general presumption of arbitrability in labor disputes does not apply when "determining whether arbitration agreements between the union and the employer apply to disputes between trustees and employers." *Schneider Moving & Storage Co. v. Robbins*, 466 U.S. 364, 372 (1984). Second, the CBA and the trust agreement "evidence no intent on the part of the parties to require arbitration of disputes between the trustees and the employers." *Id.*; *accord Trs. of Local 478 Trucking & Allied Indus. Pension Fund v. Siemens Corp.*, 721 F.2d 451, 455 (3d Cir. 1983). The

CBA's arbitration provision applies only to disputes between the parties, but the Fund is not a party to the CBA and thus not expressly subject to the arbitration requirement. *See Robbins*, 466 U.S. at 374; *Trs. of Local 478 Trucking*, 721 F.2d at 454, 455. Only the Union or NPHS can invoke the arbitration process, and it is "unreasonable to infer that the parties to these agreements, or to the trust agreements, intended the trustees to rely on the Union to arbitrate their disputes with the employer." *Robbins*, 466 U.S. at 375; *see Trs. of Local 478 Trucking*, 721 F.2d at 455.

Finally, the Fund may enforce the trust agreement by filing a civil lawsuit. "Nowhere in the trust agreement[] is the exercise of that authority expressly conditioned on the exhaustion of any contractual remedies that might be found in the collective-bargaining agreements of individual employers." *Robbins*, 466 U.S. at 373; *see Trs. of Local 478 Trucking*, 721 F.2d at 454–55. In addition, implying such a condition to multi-employer funds would be "unreasonable." *Robbins*, 466 U.S. at 373 ("Any diminution of the fund caused by the arbitration requirements of a particular employer's collective-bargaining agreement would have an adverse effect on the other participants."); *see Trs. of Local 478 Trucking*, 721 F.2d at 457.

In sum, the Fund has no legal obligation to arbitrate its claim of delinquent contributions from NPHS.

### III.   CONCLUSION

For the foregoing reasons, the Court denies Defendant NPHS's motion to dismiss. An Order consistent with this Memorandum will be docketed separately.